UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMALL S. BAKER,

Plaintiff,

v.

CHAPLAIN KIM et al.,

Defendants.

CASE NO. 2:26-CV-3251-TMC-DWC

ORDER DECLINING TO SERVE COMPLAINT

The District Court referred this action to United States Magistrate Judge David W. Christel. Plaintiff Jamall S. Baker, proceeding *pro se* and *in forma pauperis*, filed this civil rights complaint under 42 U.S.C. § 1983. Having reviewed and screened Plaintiff's Complaint under 28 U.S.C. §1915A, the Court finds Plaintiff has failed to state a claim upon which relief can be granted, but provides Plaintiff leave to file an amended pleading by November 16, 2026, to cure the deficiencies identified herein.

## I. Background

In the Complaint, Plaintiff, an inmate at the Monroe Correctional Complex-Sky River Treatment Center ("MCC-SRTC"), in Monroe, Washington, practices Afrocentric Islamic

Monotheism. Dkt. 6 at 4. Plaintiff alleges that between January and May of 2025, Defendant Kim, the chaplain at MCC-SRTC, and Defendant Jakstas, the head religious coordinator for the Washington State Department of Corrections ("DOC"), violated his right to practice his religion under the Religious Land Use & Institutionalized Persons Act ("RLUIPA") and the First Amendment to the United States Constitution. *Id.*[1]

Specifically, in Count I, Plaintiff alleges that Defendant Kim withheld certain religious items donated to Plaintiff by his friends and family, denied Plaintiff's request to hold Moorish Koranic classes and obtain relevant religious items for the class, required Plaintiff to purchase prayer oils from Union Supply Direct instead of Halal Co., denied his request to have members of the Moorish Science Temple teach in the prison, and denied Plaintiff's request to purchase a wedding ring that was consistent with his religious beliefs. *Id.* at 4-8. In Count II, Plaintiff similarly alleges that Defendant Jakstas violated Plaintiff's rights by requiring him to purchase items from Union Supply Direct for religious items. *Id.* at 6. And in Count III, Plaintiff again alleges that Defendants Kim and Jakstas violated his rights by requiring him to purchase prayer oils from Union Supply Direct. *Id.* at 7-8. Plaintiff requests declaratory relief and $5,000 in damages. *Id.* at 9.

**II. Discussion**

Under the Prison Litigation Reform Act of 1995, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to

[1] Although Plaintiff does not explicitly reference RLUIPA in his Complaint, the Court interprets the Complaint to implicate Plaintiff's rights under both RLUIPA and the First Amendment. Dkt. 6.

state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* at (b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is, therefore, to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994).

To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633. Further, a § 1983 suit cannot be based on vicarious liability alone but must instead allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

A. <u>RLUIPA</u>

RLUIPA prohibits prison officials from substantially burdening a prisoner's "'religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means.'" *Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir. 2009) (quoting *Warsoldier v.*

*Woodford*, 418 F.3d 989, 997-98 (9th Cir. 2005)); 42 U.S.C. § 2000cc-1. A plaintiff "bears the initial burden" of showing the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." *Warsoldier*, 418 F.3d at 994. To constitute a "substantial burden," the challenged action "must impose a significantly great restriction or onus upon [religious] exercise," such that it "intentionally puts significant pressure on inmates … to abandon their religious beliefs." *Id.* at 995-96. In other words, the government "must place more than an inconvenience on religious exercise." *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks omitted).

The Supreme Court has not read RLUIPA as elevating the "accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005). Safety and security remain compelling government interests, and courts owe deference to "institutional officials' expertise in this area." *Id.* at 725 n.13.

1. Plaintiff's Access to Donated Religious Items

Plaintiff alleges Defendant Kim violated RLUIPA withholding religious items that were donated by his family and friends. Dkt. 6 at 4-5.

Plaintiff fails to establish his rights under RLUIPA. Plaintiff does not assert that he has been denied access to these items entirely. Dkt. 6 at 4-5. In fact, Plaintiff acknowledges that only some of the donated items were withheld, meaning he had access to the remaining items. *See id.* Moreover, Plaintiff concedes that he can purchase all religious items through Union Supply Direct. *Id.* To the extent Plaintiff is arguing that Defendants are violating his rights by requiring him to purchase the necessary religious items, the Supreme Court has foreclosed this argument.

*See Cutter*, 544 U.S. at 720 n.8 ("RLUIPA does not require a State to pay for an inmate's devotional accessories").

2. Plaintiff's Request to Establish Weekly Moorish Koranic Classes

Plaintiff argues that Defendant Kim violated RLUIPA by denying his request to hold weekly Moorish Koranic classes and obtain relevant religious items. Dkt. 6 at 5.

Plaintiff fails to establish he was substantially burdened by Defendant Kim's decision. *Alvarez*, 518 F.3d at 1156. Plaintiff's allegations are conclusory and do not explain how the inability to hold such classes substantially burdens his ability to practice his religion. *Kaufman v. Pugh*, 733 F.3d 692 (7th Cir. 2013) (concluding prison officials did not violate RLUIPA when they denied an inmate's request to form a weekly study group on Atheism); *Van Wyhe v. Reisch*, 581 F.3d 639, 655-57 (8th Cir. 2009) (concluding prison officials did not violate RLUIPA by denying an inmate's request for extra group study time of the Torah).

3. Access to Prayer Oil from an Outside Vendor

Plaintiff claims that Defendants Kim and Jakstas violated RLUIPA by requiring him to purchase prayer oils from Union Supply Direct. Dkt. 6 at 5-7.

An outright ban of prayer oils by prison officials, absent a compelling state interest that is effectuated by the least restrictive means, violates RLUIPA. *Nance v. Miser*, 700 Fed. Appx. 629, 632-33 (9th Cir. 2017).[2] Prison officials may, however, limit the use and means of obtaining prayer oils. *Id.* For example, courts have routinely held that prison officials can require inmates to purchase prayer oils from an authorized vendor. *E.g.*, *Thomas v. Little,* No. 07-1117-BRE/egb,

[2] In *Nance*, the inmate requested to purchase prayer oils from an approved vendor and use them under the supervision of the chaplain. 700 Fed. Appx. at 632. The defendants conceded that granting the inmate's request would not impede prison security, and the court held that the defendants failed to show that the ban was the least restrictive means to advance their interest. *Id.* Consequently, the court held that the outright ban of prayer oils violated RLUIPA. *Id.* at 631-33.

2009 WL 1938973, at *5 (W.D. Tenn. July 6, 2009); *Davis v. Powell,* 901 F. Supp. 2d 1196, 1215 (S.D. Cal. 2012); *Tate v. Dickinson*, No. 2:13-cv-2393-WBS-EFB P, 2014 WL 2877317, *2-3 (E.D. Cal. June 24, 2014); *Bey v. Tenn. Dep't of Corr.,* No. 2:15-CV-174-TWP-MCLC, 2018 WL1542383, *3 n.3 (E.D. Tenn. Mar. 29, 2018); *Jenkins v. Sinclair*, 2018 WL 4608312, Case No. C17-5192-BHS-TLF, *5-6 (W.D. Wash. Sept. 4, 2018).

Plaintiff fails to establish he was substantially burdened by Defendants requiring him to purchase prayer oils from Union Supply Direct. *Alvarez*, 518 F.3d at 1156. Unlike *Nance*, Plaintiff can purchase and use prayer oils. 700 Fed. Appx. at 632-33; Dkt. 6 at 4-5. And in *Jenkins*, this court explicitly addressed an inmate's request to purchase prayer oil through his preferred vendor instead of Union Supply Direct. 2018 WL 4608312, at 5-6. Here, like *Jenkins*, Plaintiff fails to allege facts demonstrating that the prayer oil accessible through Union Supply Direct cannot serve its religious purpose. *Id.*; Dkt. 6 at 4-6. Plaintiff supports his claim only with conclusory allegations, such as the unsupported allegation that the prayer oil available through Union Supply Direct is lower quality and causes inmates to get sick, which is insufficient. Dkt. 6 at 8; *see Ashcroft v. Iqbal,* 556 U.S. 662, 680-81, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims).[3]

//

//

[3] To the extent Plaintiff alleges Defendants violated RLUIPA by denying his request to use prayer oils in his cell, courts permit limiting such use when an inmate fails to establish that the inability to use prayer oils in their cells substantially burdens their religious exercise. Dkt. 6 at 8; *e.g.*, *Hodgson v. Fabian*, No. CIV. 08-5120 JNESRN, 2009 WL 2972862, at *13 (D. Minn. Sept. 10, 2009) ("Plaintiff is not prohibited from using prayer oils to express his religion; he is only prohibited from keeping or using prayer oils in his cell"), *aff'd*, 378 Fed. Appx. 592 (8th Cir. 2010). Plaintiff fails to allege facts establishing that Defendants' denial of his request to use prayer oils in his cell substantially burdens his religious exercise. *Alvarez*, 518 F.3d at 1156.

4. Classes Administered by the Members of the Moorish Science Temple

Plaintiff argues Defendant Kim violated RLUIPA by denying his request to have members of the Moorish Science Temple teach classes in the prison. Dkt. 6 at 7.

Plaintiff fails to establish how Defendant Kim's decision substantially burdens his religious exercise. *Alvarez*, 518 F.3d at 1156. Plaintiff's allegations are conclusory and do not explain how members of the Moorish Science Temple being denied access to teach at the prison impacts his ability to practice his faith. *Jones*, 733 F.2d at 649.

5. Plaintiff's Request to Purchase a Wedding Band

Finally, Plaintiff alleges that Defendant Kim violated RLUIPA by denying his request to purchase a wedding band that is consistent with his faith. Dkt. 6 at 7.

Plaintiff fails to establish how Defendant Kim's denial of his request to purchase a wedding band that complied with his religious beliefs constituted a substantial burden. *Alvarez*, 518 F.3d at 1156. Plaintiff requested a ring that was silver or titanium, black, polished, and blessed. Dkt. 6 at 5. Plaintiff claims that this is consistent with his religion because "[t]he Prophet wore a [s]ilver ring." *Id.* Plaintiff's allegations are conclusory and do not explain how an alternative ring would violate his religious beliefs. *Jones*, 733 F.2d at 649.

In summary, Plaintiff fails to establish that any of the alleged conduct created a substantial burden on his religious exercise. *Alvarez*, 518 F.3d at 1156. Consequently, the Court need not evaluate Plaintiff's RLUIPA claim further. *See Warsoldier*, 418 F.3d at 994-95. Therefore, Plaintiff has failed to state a claim upon which relief can be granted.

B. <u>The First Amendment</u>

To establish a First Amendment violation, Plaintiff "must show that [defendant] burdened the practice of [his] religion, by preventing [him] from engaging in conduct mandated by [his]

faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) (footnote omitted)). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" *Freeman*, 125 F.3d at 737 (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)). When a prison regulation substantially infringes an inmate's First Amendment religious practices, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

In light of the Court's disposition of Plaintiff's claims under RLUIPA, it is unlikely Plaintiff would succeed with his claims under the First Amendment. *See Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (explaining that RLUIPA is more protective than the First Amendment). At most, Plaintiff has alleged an "inconvenience on religious exercise," not "substantial pressure ... to violate his beliefs." *Guru Nanak Sikh Soc.*, 456 F.2d at 988. Because Plaintiff fails to establish this threshold element, the Court need not apply the *Turner* factors to determine whether the policies are supported by reasonable penological goals. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). As such, Plaintiff has failed to state a claim upon which relief can be granted.

**III. Conclusion**

Because of the deficiencies identified above, the Court declines to direct Plaintiff's complaint be served on Defendants. Plaintiff is granted leave to file an amended complaint curing the noted deficiencies on or before November 16, 2026. Plaintiff must ensure that the amended complaint carries the same case number as his original complaint. If Plaintiff fails to

timely respond to this Order, the Court will recommend that this action be dismissed pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is advised that an amended pleading operates as a complete substitute for an original pleading. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing H*al Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended)). Thus, any amended complaint must clearly identify each intended Defendant, the constitutional claim(s) asserted against each Defendant, the specific facts which Plaintiff believes support each claim, and the specific relief requested. Further, attachments to an amended complaint will not be considered in analyzing whether the amended complaint states a claim.

The Clerk is directed to send Plaintiff the appropriate forms so that Plaintiff may file an amended complaint.

Dated this 15th day of October, 2026.

David W. Christel
United States Magistrate Judge